IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN ALLEN ANDERSON,
    Petitioner,

vs.                                  Case No.: 3:11cv210/MCR/EMT

KENNETH S. TUCKER,
    Respondent.
_____/

**REPORT AND RECOMMENDATION**

        Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1). Respondent filed a motion to dismiss the petition as untimely, with relevant portions of the state court record (doc. 24). Petitioner filed a response in opposition to the motion (doc. 27).

        The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter. It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.    BACKGROUND AND PROCEDURAL HISTORY

        The relevant procedural history of this case is established by the state court record (doc. 24).[1] Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2004-CF-5067, with one count of sexual battery (defendant 18 years of age or older and victim less than 12 years) (Count 1) and one count of lewd or lascivious molestation (defendant 18 years of age or older and victim less than 12 years) (Count 2) (Ex. A at 1). The victim was Petitioner's daughter, who was

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's motion to dismiss (doc. 24). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

then four years old (Ex. B at 71). Following a jury trial, Petitioner was found guilty as charged (Ex. A at 36; Exs. B, C). On May 6, 2005, he was adjudicated guilty and sentenced as a sex offender to life imprisonment without the possibility of parole on Count 1 and a concurrent term of fifteen (15) years of imprisonment on Count 2, with pre-sentence jail credit of 1 day (Ex. A at 42–47).

Petitioner appealed the judgment and sentence to the Florida First District Court of Appeal ("First DCA"), Case No. 1D05-2402 (Ex. D). The First DCA affirmed the judgment per curiam without written opinion on October 10, 2006 (Ex. G). Anderson v. State, 939 So. 2d 1062 (Fla. 1st DCA 2006) (Table). Petitioner did not seek further review.

On October 9, 2008, Petitioner filed, through counsel, a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. H at 1–8). The state circuit court summarily denied the motion on January 16, 2009 (*id.* at 37–40). Petitioner, through counsel, appealed the decision to the First DCA, Case No. 1D09-1065 (Ex. I). The appellate court affirmed per curiam without written opinion on May 29, 2009, with the mandate issuing June 16, 2009 (Exs. K, L). Anderson v. State, 9 So. 3d 616 (Fla. 1st DCA 2009) (Table).

On August 4, 2010, Petitioner filed a pro se "Motion to File Belated Post-Conviction Motion" and a "Motion for Post-Conviction Relief Alleging 'Actual Innocence'" (Ex. M at 1–24). The state circuit court dismissed the motion as untimely on December 1, 2010 (*id.* at 25–28). Petitioner appealed the decision to the First DCA, Case No. 1D11-0266 (Ex. N). The appellate court affirmed per curiam without written opinion on March 14, 2011, with the mandate issuing April 11, 2011 (Exs. N, O). Anderson v. State, 57 So. 3d 847 (Fla. 1st DCA 2011) (Table).

Petitioner filed his federal habeas petition on April 27, 2011 (doc. 1 at 6).[2] He asserts the following grounds for relief:

> Ground One: The trial court erred in failing to allow the Petitioner the opportunity to file a belated 3.850 where the first 3.850 was not addressed on the merits due to the attorney's errors.
>
> Ground Two: Newly discovered evidence in the form of critical impeachment evidence that severely weakens the State's case and shows the Petitioner is "actually innocent" of the crime.

---

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

   Ground Three: Ineffective assistance of counsel in failing to adequately prepare, investigate and present critical impeachment evidence that shows the Petitioner's actual innocence.

(doc. 1 at 4–5).

II. ANALYSIS

  Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1). Respondent contends the appropriate statutory trigger for the limitations period is § 2244(d)(1)(A), the date Petitioner's conviction became final (doc. 24 at 17). Respondent further contends that this date is January 8, 2007 (*id.*).

  Petitioner does not expressly argue that a different statutory trigger for the federal limitations period applies. However, because his claim of ineffective assistance of counsel asserted in Ground Three is based upon counsel's failure to investigate and present impeachment evidence discovered after trial (which is the "newly discovered evidence" referenced in Ground Two), the undersigned will consider whether the appropriate trigger for the limitations period is the date on which the factual

predicate of this claim could have been discovered through the exercise of due diligence.[3] Petitioner contends trial counsel was ineffective for failing to investigate and present the following "newly discovered evidence" to impeach the credibility of the State's most important witnesses, the victim and her mother (the former Mrs. Anderson): (1) the potential testimony of Bill Jones, one of the former Mrs. Anderson's former husbands, that in 1990, she accused him of physically abusing their eighteen-month-old son when she discovered bruises on the child's buttocks; and that during the pendency of criminal charges against Mr. Jones based upon those allegations, she sought full custody of the child and child support payments from Mr. Jones; (2) documents showing the former Mrs. Anderson allegedly forged Petitioner's signature to refinance the mortgage on their home; and (3) a

---

[3] Petitioner's Ground One challenges the state court's dismissal of his second Rule 3.850 motion as untimely without addressing the merits (in his motion, he asserted the same claims of "newly discovered evidence" and ineffective assistance of trial counsel he asserts here). The Eleventh Circuit has repeatedly held that defects in state collateral proceedings do not provide a basis for habeas relief. *See* Carroll v. Secretary, DOC, 574 F.3d 1354, 1365 (11th Cir. 2009); Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006) (per curiam); Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam). The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—that is, the conviction itself—and thus habeas relief is not an appropriate remedy. *See* Carroll, 574 at 1365; Quince, 360 F.3d at 1261–62; Spradley, 825 F.2d at 1568. Furthermore, such challenges often involve claims under state law, for example, Florida Rule of Criminal Procedure 3.850, which governs the availability of, and procedures attendant to, post-conviction proceedings in Florida; and a state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *See* Carroll, 574 F.3d at 1365 (quoting McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992)). Because Ground One does not state a cognizable claim, the date Petitioner could have discovered the factual predicate of this claim is irrelevant to the timeliness determination.

Petitioner's Ground Two raises a freestanding claim of actual innocence, which has not been recognized by the Supreme Court or the Eleventh Circuit as a cognizable claim in non-capital habeas cases. Indeed, the Eleventh Circuit's view of such claims is well settled:

> "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400, 113 S. Ct. 853, 860, 122 L. Ed. 2d 203 (1993). It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial. "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.*

Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002); *see also* Mize v. Hall, 532 F.3d 1184, 1195 (11th Cir. 2008); Jordan v. Sec'y Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007) (refusing to consider a claim of actual innocence in a non-capital case because "our precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases"). Therefore, the date Petitioner could have discovered the factual predicate of Ground Two is also irrelevant to the determination of the appropriate trigger for the federal statute of limitations.

Case No.: 3:11cv210/MCR/EMT

report prepared by Deputy Arnold stating that the victim falsely accused Paul Gray, one of the victim's former foster parents, of sexually molesting her (doc. 1 at 15–17; doc. 27 at 5–7).

The question under § 2244(d)(1)(D) is not when the petitioner first discovers the new evidence, but when he could have learned of the evidence through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(D); *see also, e.g.*, Slutzker v. Johnson, 393 F.3d 373, 382 n.9 (3d Cir. 2004) ("[T]he statute of limitations starts running from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence, not the date on which the factual predicate actually was discovered."); Schlueter v. Varner, 384 F.3d 69 (3d Cir. 2004) (habeas petitioner could have discovered factual predicate for conflict-of-interest claim involving trial counsel through exercise of due diligence prior to effective date of AEDPA, not on later date when petitioner actually discovered that defense co-counsel allegedly shared civil practice with prosecutor; it was inconceivable that attorneys could have hidden their office-sharing arrangement from small legal community or public, and petitioner's current attorneys learned of arrangement simply by interviewing co-trial counsel, a step which could have been accomplished years earlier). With these concepts in mind, the undersigned will consider the "newly discovered evidence" alleged by Petitioner.

   (1) <u>Evidence of the former Mrs. Anderson's conduct toward Bill Jones</u>

Petitioner alleges he and his family members (his sister, mother, and father) specifically asked trial counsel to investigate the former Mrs. Anderson's "past dealings with her ex-husbands" (doc. 1 at 19; doc. 27 at 8–9). He alleges that evidence of the former Mrs. Anderson's child abuse accusations against Bill Jones, and her attempt to obtain child custody and financial support from Jones during that time was discovered by postconviction counsel's investigators prior to the filing of the first Rule 3.850 motion on October 9, 2008 (doc. 1 at 20; doc. 27 at 9). Petitioner alleges trial counsel could have discovered this evidence with due diligence and presented it as impeachment evidence at trial (doc. 27 at 9).

The undersigned concludes Petitioner himself could have discovered the factual predicate of this claim, that is, evidence concerning the former Mrs. Anderson's accusations against her ex-husband Bill Jones and her efforts to obtain custody and child support, prior to trial, and certainly prior to the date his conviction became final on January 8, 2007. At the time of trial, Petitioner was aware that

Mrs. Anderson had ex-husbands, as evidenced by his assertion that he asked trial counsel to investigate her "dealings" with them. Further, Petitioner's counseled Rule 3.850 motion demonstrates that all of the information referenced by Petitioner was obtained simply by searching the court records of Escambia County, locating Bill Jones, and speaking with him (*see* Ex. H at 23–27). Petitioner posted bond after his arrest and was detained in the local jail only one day from the date of his arrest to the date he was convicted (November 3, 2004 to May 6, 2005) (*see* Ex. A, Progress Docket Printout). Diligence would require Petitioner to ascertain whether counsel was investigating his wife's "past dealings" with her former husbands as Petitioner had requested, and if not, to investigate the court records himself. Such diligence would have led to the discovery of the alleged impeachment evidence.

   (2) <u>Evidence of the former Mrs. Anderson's allegedly forging documents</u>

Petitioner's allegation that trial counsel should have investigated his ex-wife's alleged forgery of his signature on loan documents to refinance their home may not be deemed a legitimate factual predicate of his claim of ineffective assistance of trial counsel. The documents submitted by Petitioner in support of this allegation did not exist at the time of Petitioner's trial, indeed they did not exist for more than a year thereafter.[4] Therefore, Petitioner's allegations concerning these documents may not legitimately form the factual predicate of Petitioner's claim of ineffective assistance of trial counsel.

   (3) <u>Evidence of the victim's alleged prior allegations of sexual abuse by foster parent</u>

Petitioner alleges trial counsel should have investigated and presented a report prepared by Deputy Arnold stating Mrs. Anderson told him that the victim reported that Paul Gray, one of the victim's former foster parents, sexually molested her in the same manner as Petitioner. The record demonstrates that Deputy Arnold's report was discussed at Petitioner's trial (*see* Ex. B at 170, 174–78). Therefore, the factual predicate of this aspect of Petitioner's ineffective assistance of counsel claim was or could have been known by Petitioner prior to the date his conviction became final.

---

[4] These documents include a mortgage executed by Mrs. Anderson on October 18, 2006 (the refinance mortgage), a satisfaction of mortgage issued November 20, 2006 on the original mortgage, and a final judgment of mortgage foreclosure rendered January 16, 2008 (doc. 27, Exhibits).

Case No.: 3:11cv210/MCR/EMT

Based upon the foregoing, the undersigned concludes the factual predicate of Ground Three, the only claim cognizable in this habeas proceeding, could have been discovered through the exercise of due diligence prior to January 9, 2007, the date Petitioner's conviction became final. Therefore, Petitioner has not demonstrated that § 2244(d)(1)(D) applies. The appropriate trigger for the federal limitations period is thus the date Petitioner's conviction became final, pursuant to § 2244(d)(1)(A).

The First DCA affirmed Petitioner's judgment and sentence on October 10, 2006. Petitioner did not seek review of the judgment in the United States Supreme Court; therefore, his conviction became final upon expiration of the ninety-day period for doing so, January 9, 2007.[5] *See* Chavers v. Sec'y, Fla Dep't of Corr., 468 F.3d 1273, 1274–75 (11th Cir. 2006) (judgment of conviction becomes "final" after the expiration of the ninety-day period in which the petitioner could have filed a petition for a writ of certiorari, which begins to run on the date of the appellate court's affirmance of the conviction, not the date of the appellate court's mandate). Petitioner thus had one year from that date, or until January 9, 2008, to file his § 2254 petition. *See* Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on anniversary of date it began to run) (citing Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 186, 1289 n.1 (11th Cir. 2007)). Petitioner did not file his federal petition on or before that date; therefore, it is untimely unless tolling principles apply and render it timely.

Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). As evidenced by the procedural history set forth *supra*, Petitioner did not file any postconviction applications on or before January 9, 2008. He filed his first postconviction application on October 9, 2008; however, that was after the one-year limitations period expired. Therefore, neither that motion nor any other postconviction applications filed in state court after that date tolled the federal limitations period. *See* Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000). Accordingly, Petitioner's federal petition, filed on April 27, 2011, was untimely.

---

[5] Pursuant to Rule 6 of the Federal Rules of Civil Procedure, the day of the event that triggers the time period is excluded from the calculation, and the last day of the period is included, so the ninety–day period expired on January 9, 2007.

Petitioner contends the untimely filing of his federal petition was caused by postconviction counsel's ineffectiveness (doc. 27 at 2–4). He asserts counsel took two years to file his Rule 3.850 motion, and then failed to adequately present his claims (*id.*). He states postconviction counsel presented his claims as claims of trial court error instead of ineffective assistance of counsel and newly discovered evidence, and, as a result, the state court determined the claims were "inappropriately raised pursuant to Rule 3.850" (*id.*). Petitioner asserts he asked counsel to file an amended motion after his cellmate advised him that the claims were improperly presented, but counsel failed to do so (*id.*). He contends counsel's failure to file the motion sooner and failure to properly raise his claims excuses the untimely filing of his petition under Martinez v. Ryan, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).

In Martinez, the Supreme Court held, "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 132 S. Ct. at 1320. In the instant case, however, Petitioner failed to demonstrate a causal connection between postconviction counsel's alleged ineffectiveness and the late filing of his federal petition. Even if the court tolled the limitations period for the entire period of counsel's alleged ineffectiveness, that is, beginning when his conviction became final on January 9, 2007, and ending on June 16, 2009, the date of the First DCA's mandate affirming the denial of his first Rule 3.850 motion filed by counsel, Petitioner waited more than one year from that date to file either his federal petition or a state postconviction motion that arguably would have provided additional tolling under § 2244(d)(2). He did not file any state postconviction applications until August 4, 2010. Therefore, he failed to demonstrate that the late filing of his federal petition was caused by postconviction counsel's ineffectiveness.

Petitioner additionally claims his actual innocence should serve as a gateway to consideration of his federal habeas claims. Neither the Supreme Court nor the Eleventh Circuit has decided whether the Constitution requires an actual innocence exception to the AEDPA's one-year filing window. *See* Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011–12 (11th Cir. 2012). If such an exception exists, a petitioner is required to (1) present new reliable evidence that was not presented at trial, and

(2) show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of the new evidence. *Id.* at 1011 (citing Schlup v. Delo, 513 U.S. 298, 324, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). With respect to the term "reasonable juror," the Supreme Court instructed: "It must be presumed that a reasonable juror would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." Schlup, 513 U.S. at 329. Additionally, it is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency. *See* Bousley v. United States, 523 U.S. 614, 623–24, 118 S. Ct. 1604, 1611–12, 140 L. Ed. 2d 828 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339, 112 S. Ct. 2514, 2518–19, 120 L. Ed. 2d 269 (1992)).

In assessing the adequacy of the petitioner's showing, the district court "is not bound by the rules of admissibility that would govern at trial." Schlup, 513 U.S. at 329. Instead, the court is allowed also to consider "the probative force of relevant evidence . . . 'including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.*, 513 U.S. at 328 (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970)).

Petitioner contends the following "newly discovered evidence" demonstrates his actual innocence: (1) loan documents showing the former Mrs. Anderson allegedly forged Petitioner's signature to refinance their home on October 18, 2006 (seventeen months after Petitioner's trial) and documents showing the home was subsequently foreclosed in January of 2008, (2) potential testimony of Bill Jones regarding the former Mrs. Anderson's "corrupt, malicious, untruthful character," (3) a report of Deputy Arnold, which states the victim previously accused Paul Gray, a former foster parent, of sexually molesting her, and (4) a certificate of marriage showing that on June 14, 2008 (three years after Petitioner's trial), the former Mrs. Anderson married Damarcus "Mark" Smith, the protective services worker who originally placed the victim in the Andersons' home (doc. 27 at 18–19, attached Exhibits).

Regarding the potential testimony of Bill Jones, Petitioner has offered no reliable evidence, for example, an affidavit or deposition testimony, of the substance of Mr. Jones's testimony if he had

testified at Petitioner's trial. In the first Rule 3.850 proceeding, Petitioner's counsel included a description of his investigator's interview with Mr. Jones in a memorandum filed in support of the Rule 3.850 motion (Ex. H at 23–27). Counsel also included a history of the former Mrs. Anderson's marriages and divorces, gleaned from court records of Escambia and Santa Rosa counties (*id.* at 21–27). This history included a description of when each marriage and divorce occurred, whether each divorce was amicable, and the terms of each divorce as related to property distribution, child custody, and support (*id.*). As to Bill Jones, counsel's memorandum stated that Jones and the former Mrs. Anderson were married in June of 1988 and divorced in November of 1989 (Ex. H at 23). The two had one child, Eric (*id.*). Mr. Jones and the former Mrs. Anderson agreed that Mr. Jones would keep the marital home, they would share custody of their son but he would reside primarily with Mrs. Anderson, and neither party would pay child support (*id.*). Within sixteen days after the final judgment was entered, Mrs. Anderson picked up Eric (approximately eighteen months old at the time) from daycare and found bruises on his buttocks (*id.*). She reported the injuries to the state child protective services agency, apparently accusing Mr. Jones of inflicting the injuries (*id.*). An investigation ensued, and Mr. Jones was criminally charged with child abuse (*id.*). The day after the charges were filed, Mrs. Anderson filed a motion in the divorce case seeking child support from Mr. Jones and sole custody of the child (*id.*). Mr. Jones responded by filing his own motion seeking custody of the child, alleging that Mrs. Anderson or her boyfriend was more likely the perpetrator of the abuse (*id.* at 24). After a three-day criminal trial, Mr. Jones was found not guilty of the child abuse charge (*id.*). After a trial in the divorce case, the judge determined that the terms of the final divorce decree would remain unmodified, except Mr. Jones would be required to pay child support (*id.*).

Apparently, Mr. Jones told the postconviction investigator that Mrs. Anderson cheated on him during their marriage (Ex. H at 25). He told the investigator she originally wanted possession of their home, but when he told her she "had no claim to it" because he owned it prior to the marriage, and he confronted her about her infidelity, she withdrew her demand (*id.*). Jones told the investigator that Mrs. Anderson always started a new relationship before she finished her previous one (*id.* at 26). He opined that she only stayed with her husbands as long as they were useful to her (*id.*). He stated he believed that Mrs. Anderson used her "power of influence" over Petitioner to manipulate the sexual abuse charges (*id.*). Mr. Jones and the investigator discussed the fact that Mrs. Anderson admitted in

a deposition that Damarcus "Mark" Smith, the former protective services worker who reportedly handled the victim's adoption into the Andersons' home, began living with Mrs. Anderson just months after Petitioner was arrested and left the home (*id.* at 26–27).

None of the "newly discovered evidence" presented by Petitioner suggests he did not commit the sexual abuse of which he was convicted. There is no similarity in the child abuse cases involving Mr. Jones and Petitioner. In Mr. Jones's case, Mrs. Anderson reported the abuse after they were divorced; whereas, in Petitioner's case, Petitioner and Mrs. Anderson both testified they were happily married at the time she reported the sexual abuse (*see* Ex. B at 72, 214). In Mr. Jones's case, the abuse was physical, not sexual, there was undisputed physical evidence that the abuse occurred, but, according to the jury, there was insufficient evidence to establish that Mr. Jones inflicted the abuse. In Petitioner's case, the child herself testified that the sexual abuse occurred and that Petitioner was the person who inflicted is. She testified that Petitioner, on more than one occasion, placed his penis into her mouth and required her to perform oral sex upon him (Ex. B at 41–68). The victim also testified to two separate acts of lewd and lascivious molestation wherein Petitioner placed his penis upon her private areas, and Petitioner had her masturbate him (*id.*).

Further, Petitioner's "new evidence" does not suggest that Mrs. Anderson engaged in a pattern of falsely reporting child abuse in order to obtain financial gain. The evidence that more than ten years prior to Petitioner's offense conduct, Mrs. Anderson initially demanded possession of the marital home when she divorced Mr. Jones and then sought child support from him immediately after she reported the bruises on her child's body, even when viewed in combination with Petitioner's loan documents showing she refinanced their marital home seventeen months after Petitioner's conviction, does not suggest a pattern of false child abuse reports, nor does it suggest she had a financial motive for reporting the abuse involving Petitioner.

Additionally, Petitioner failed to show that evidence that Mrs. Anderson married Damarcus Smith in June of 2008 would have had any affect on the jury's verdict. During trial, Mrs. Anderson testified regarding Mr. Smith's prior involvement with the family and that he had moved into the home after Petitioner was arrested on the sexual abuse charges (Ex. B at 98–100). Therefore, the jury heard evidence of her romantic relationship with Mr. Smith.

Finally, the report of Deputy Arnold, which states the victim told Mrs. Anderson that a previous foster parent sexually molested her in the same way as Petitioner, is not new evidence. The report was addressed at trial during testimony of Paul Maxwell, the child protective services worker who investigated Mrs. Anderson's report of sexual abuse (Ex. B at 166–87). Mr. Maxwell testified that as part of his investigation, he reviewed the victim's history while she was supervised by the state child protection agency (*id.*). He testified he did not find any reports that involved allegations of sexual abuse of the victim (*id.*). Defense counsel asked Mr. Maxwell if he reviewed the report prepared by Deputy William Arnold, and counsel provided a copy of the report to Mr. Maxwell (*id.* at 170). Mr. Maxwell responded that he reviewed Deputy Arnold's report, but he did not include information from that report in his own report (*id.* at 170). Mr. Maxwell testified he did not speak with any of the victim's former foster parents, and he testified he did not know if any allegations of sexual abuse had been made that were not reported in the official child abuse reporting system (*id.* at 174). Mr. Maxwell admitted that Deputy Arnold's report referred to a "prior incident" involving the victim (*id.* at 175). Defense counsel asked, ". . . we don't know what the foster care parents might have said . . ., is that correct?" (*id.* at 178). Mr. Maxwell responded, "Yes." (*id.*). On re-direct, the prosecutor elicited testimony from Maxwell that the victim had been under protective services supervision since 2000, when she was less than a year old (*id.* at 179). Mr. Maxwell testified there were two prior child abuse reports involving the victim, in 2000 and 2001, but they were not related to sexual abuse (*id.* at 179–80). Defense counsel requested a sidebar and argued that the prosecutor opened the door to the admission of Deputy Arnold's report, and he wished to question Mr. Maxwell further about the fact that he did not investigate this allegation of prior sexual abuse (*id.* at 180). Outside the presence of the jury, the prosecutor read the relevant portion of Deputy Arnold's report, which stated, "[Mrs.] Anderson stated that [the victim] also stated that a previous foster parent, Mr. Gray, made her perform oral sex on him also." (*id.* at 182). Defense counsel proffered the following testimony of Mr. Maxwell:

> Q. And did you follow up on this report by a law enforcement officer?
>
> A. No, sir, I didn't.

>       Q. Did you feel it was important when you saw a report by a law enforcement officer alleging a separate individual had the victim in this case perform oral sex on him?
>
>       A. Yes, sir. It prompted me to do the search of the database to verify if there had been any prior reports of sexual abuse involving [the victim], which it revealed none.
>
>       Q. It doesn't say in here that there was any report called in anywhere, does it?
>
>       A. No sir, it doesn't.
>
>       Q. And did you ever go to verify whether a Mr. Gray was a foster parent or a friend of any foster parents or any person associated with [the victim]'s family?
>
>       A. No, sir.

(Ex. B at 183).

The prosecutor opposed admission of this testimony of hearsay grounds. She advised the court that she previously asked Mrs. Anderson if she told Deputy Arnold that the victim stated that a previous foster parent, Mr. Gray, made her perform oral sex on him, and Mrs. Anderson stated she never told Deputy Arnold that (*id.* at 184). The prosecutor stated she then contacted Deputy Arnold and asked what that sentence in his report meant, and he stated that his original notes from his interview with Mrs. Anderson were destroyed in a hurricane, and he did not know whether he misunderstood her or if her statement "got lost in translation" (*id.*). The prosecutor offered to proffer Mrs. Anderson's testimony that she never made the statement, but defense counsel accepted counsel's representation that she would testify consistently with the prosecutor's representation (*id.* at 184–85). The court sustained the prosecutor's objection to the proffered testimony (*id.* at 186–87).

Deputy Arnold's admission to the prosecutor that the statement in his report may have been inaccurate, and Mrs. Anderson's unequivocal statement to the prosecutor that she never made that statement to Deputy Arnold, casts substantial doubt on the reliability of the statement in Deputy Arnold's report. Further, Petitioner has not proffered any new evidence supporting the reliability of the statement. Moreover, the victim herself testified that no one but Petitioner and one of the Andersons' sons had ever made her perform oral sex:

>       Q. Okay. Besides daddy and [the Andersons' son], has anybody else ever touched you like this?

> A. No, ma'am.
>
> Q. In all the places that you lived before you came to live with the Andersons, nobody else ever touched you that way?
>
> A. No, ma'am.

(Ex. B at 51–53).[6]

Petitioner failed to demonstrate that any of his "newly discovered evidence" would have had any impeachment value as to the testimony of Mrs. Anderson or the victim, let alone that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of the new evidence. Indeed, he has fallen far short of presenting a colorable claim of his factual innocence of the sexual abuse charges. Therefore, Petitioner is not entitled to review of his habeas claims through the "actual innocence" gateway to the federal time bar.

III. CONCLUSION

Petitioner's federal petition was filed after the AEDPA'a one-year limitations period expired. He failed to show cause for the untimely filing, or that he is entitled to review of his claims through the "actual innocence" gateway. Therefore, Respondent's motion to dismiss should be granted, and the federal petition should be dismissed.

IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

---

[6] Mrs. Anderson testified that the son was prosecuted in juvenile court for the sexual improprieties involving the victim and pleaded guilty to a second degree felony (Ex. B at 73).

Case No.: 3:11cv210/MCR/EMT

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Respondent's motion to dismiss (doc. 24) be **GRANTED**.

2. That the petition for writ of habeas corpus (doc. 1) be **DISMISSED with prejudice** as untimely.

3. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 30th day of August 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**